**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**TARA MARIE BANKS,**                    :

    **Plaintiff**                    :

                      **CIVIL ACTION NO. 3:15-0693**

                       :

    **v.**                    :

                      :          **(JUDGE MANNION)**

**JOHN HARRISON**                    :

    **Defendant**                    :

## MEMORANDUM

Presently before the court is the motion for partial summary judgment filed by plaintiff Tara Marie Banks against defendant John Harrison, a police officer who was employed by the Taylor Borough Police Department. (Doc. 30). The plaintiff filed her civil rights action pursuant to 42 U.S.C. §1983 and alleged violations of her constitutional rights related to her arrest by Officer Harrison following an incident in a Walmart parking lot. The plaintiff also asserted state law claims for assault and battery alleging that Harrison used excessive force during her arrest as well as malicious prosecution. The plaintiff now moves for summary judgment with respect to liability on Counts One, Four and Five of her amended complaint, (Doc. 26), in which she claims Harrison violated her Fourth Amendment rights by using unreasonable force on her, violated her First Amendment rights by retaliating against her for exercising free speech, and that he maliciously prosecuted her. There are disputed issues of material fact regarding plaintiff's claims which preclude summary judgment in her favor. Thus, the plaintiff's motion is **DENIED** with respect to all of the stated claims.

## I.   MATERIAL FACTS[1]

On June 10, 2013, a vehicle driven by a minor teenage boy, ("C.A."), almost hit the plaintiff, her sister and her two children as they walked through the Walmart parking lot in Taylor, Pennsylvania. The plaintiff yelled at C.A. and told him to be careful. C.A. yelled to the plaintiff "I'll fucking kill you" and began to open his car door. It is then disputed whether the plaintiff intentionally kicked C.A.'s car door as C.A. claimed. The plaintiff states that when C.A. went to open his car door she put her foot up defensively to block the door from opening until her sister was able to get her children into her car. The plaintiff states that she left and C.A. got out of his car and was yelling at her in an aggressive manner. He followed the plaintiff to her car. C.A. then kicked the passenger front quarter panel of plaintiff's car causing damage and she called the police. C.A. got back into the driver's seat of his car and his mother Ingrid Jorge came out of Walmart with her baby and got in the car. When the police arrived on scene, the plaintiff heard Jorge tell C.A. to leave since he did not have a driver's license. C.A. then began to leave the parking lot on foot.

Harrison was on duty and quickly responded to the incident at Walmart. When Harrison arrived, he spoke with the plaintiff and she told him that a teenage boy kicked her car and then fled on foot. The plaintiff advised Harrison of the direction in which C.A. fled. Harrison then left the scene to look for C.A. in his patrol car.

---

[1]The material facts are derived from the plaintiff's statement of facts, (Doc. 32), the exhibits, (Doc. 33), and the defendant's response, (Doc. 34).

Sergeant Roche of the Taylor Police Department arrived on the scene a few minutes after Harrison. Roche spoke with the plaintiff and she was very excited demanding that C.A. be arrested for the damage to her car. Roche testified that he repeatedly told plaintiff to calm down and said "we'll take care of it." Roche stated that plaintiff was referencing C.A.'s ethnic background and saying "he didn't belong in this country and he should be in his own country." According to plaintiff, Roche told her that C.A. "was going to go to jail" since there was a lot of damage to her car. Roche then asked plaintiff for her car registration and insurance information which she gave him.

Harrison was able to locate C.A., who was 16 years old, and he admitted that he kicked the plaintiff's car. Harrison drove C.A. back to the Walmart parking lot. Harrison then spoke to Jorge. Harrison was informed that C.A. did not have a driver's license despite the fact that he was driving his mother's car at the time of the incident. Harrison did not charge C.A. for driving without a license since he was only going to drive over from the parking space to pick up his mother and her baby at the front of the store due to the rain. Nor did Harrison obtain information regarding Jorge's insurance or driver's license even though he was investigating an incident resulting in damage to plaintiff's vehicle. Harrison did however run Jorge's information through the police system. Harrison then allowed C.A. and Jorge to leave the scene after he spoke to Roche since he was finished questioning them.

Since it was not clear who started the incident, Roche decided to go into the Walmart store and look at the surveillance camera video footage of the parking lot to determine who was initially at fault. When Roche was leaving

3

the scene, Harrison was walking up to plaintiff and Roche heard them talking. But as he got farther away and closer to the store, Roche could not hear their conversation.

Harrison went over to the plaintiff and discussed the situation with her. Marcus Fuentes, the father of plaintiff's children, was present to pick up their children after plaintiff had called him. The plaintiff asked why Harrison did not give her Jorge's insurance information and he replied that C.A. did not hit her car with his car and that she did not need Jorge's information. Harrison stated that he advised the plaintiff he decided not to charge either the plaintiff or C.A. with any crimes. He then intended to leave the scene. He explained to the plaintiff that if she got an estimate to repair her vehicle, he would charge C.A. with an offense through juvenile court. The plaintiff told Harrison that Roche told her C.A. was going to go jail for the damage he caused to her car, and Harrison replied that in Pennsylvania "we don't arrest juveniles."

According to the plaintiff, Harrison then became "very irate" since she was questioning him in front of bystanders in the parking lot and that his demeanor changed to an aggressive one. Harrison told the plaintiff she should not be questioning him and she should contact the "governor or the senator." The plaintiff then stated, "I'm a tax paying citizen. I called you here to help me, and nobody helped me. And the kid drove away with no license. And he tried to attack me. And he vandalized my vehicle." According to plaintiff, Harrison then yelled at her.

Harrison also testified that the plaintiff became very upset that no charges were filed against C.A. and that she stated she was the victim and

demanded to know why C.A. was allowed to leave. Harrison clarified to plaintiff why he allowed Jorge and C.A. to leave and explained that he knew where they lived and told her to get an estimate. He also said "that's the way it is and I can't do anything about it."

Harrison stated that he then began to walk away from the plaintiff and that she said "this is unbelievable and you're unbelievable. You're a fucking asshole." When Roche was in front of the store, he heard Harrison yelling to him to "help him out." Roche then began to walk back to Harrison and plaintiff in the parking lot. After plaintiff cursed at him, Harrison walked back towards the plaintiff and said "you're under arrest." Plaintiff went around the trunk of her car and Harrison went around behind her. As plaintiff was attempting to get in her car, Harrison grabbed her by both of her arms and he handcuffed her after a struggle. Harrison then forcibly had to walk plaintiff towards his patrol car pulling and dragging her since she would not walk on her own. However, Harrison stated that plaintiff was standing up on her feet the entire time.

The plaintiff's version of these relevant facts differs significantly from Harrison's. Plaintiff testified that after she questioned Harrison why C.A. was not charged, he began to yell at her. She began to walk around Marcus Fuentes who was near her car and Harrison was following her. The plaintiff stated that she then looked at Roche, who she claims was still at the scene, and Roche told Harrison "that's enough, come on let's go." The plaintiff stated that Roche and Harrison then started to walk away from her towards the front of the Walmart store. The plaintiff then testified that she walked to the back

of her car and Harrison was still yelling vulgar names at her. The plaintiff stated that the "last one that I heard which provoked me to say what I said to him, his words, he called me a cunt." The plaintiff then said to Harrison, "with all due respect, sir, you're an asshole."

According to plaintiff, immediately after she called Harrison "an asshole," she turned around at the back end of her car and walked around the back to the driver's side. When she opened her car door, she could hear her children screaming and crying, and her sister reached for her because Harrison running towards plaintiff. Plaintiff then claims that Harrison grabbed her by the back of her neck and slammed her forehead off the roof of her car. The plaintiff said it hurt her head and she felt pain. Plaintiff repeatedly asked Harrison why she was being arrested but he refused to answer her. Plaintiff was then handcuffed with her hands behind her back and she did not resist at any time. Plaintiff stated that Harrison then "drag[ged]" her into his police car. Plaintiff was "hysterical" and "was in tears." Plaintiff stated that she did not see Roche during her arrest by Harrison.

When Roche arrived, Harrison was walking towards his patrol car and plaintiff was resisting the walk. Roche stated that plaintiff "was bent over and pulling and twisting sideways." Roche indicated that plaintiff was resisting and she was not "coming along" and "following instructions" and, that slight force had to be used to walk her despite the fact that she was not a threat. He said that Harrison was not dragging plaintiff and was using minimal force since he was having a hard time walking her to the patrol car "because she wasn't walking straight with him" and was "pulling off to the right." Roche stated that

6

plaintiff remained very excited and "in a raised voice [was] complaining that she didn't do nothing and Officer Harrison banged her head or hurt her head or something along them (sic)" back at her car. Roche did not see Harrison strike plaintiff or force her head onto her car. Nor did Roche see Harrison strike or push plaintiff at any time as they were walking to the patrol car. Further, at no time, did Roche hear either plaintiff or Harrison call each other any disparaging name.

After Harrison arrested the plaintiff and physically took custody of her, he transported her in his patrol car to the Taylor police station. Plaintiff was placed in a cell and then she was transported to the Lackawanna County courthouse for processing. She was fingerprinted and her mugshot was taken in the Sheriff's Office. She remained handcuffed the entire time. Plaintiff was then arraigned by a Magisterial District Judge and advised of the charges that were filed against her. Bail was set the amount of $5,000, unsecured, and the plaintiff was released from custody.

Specifically, Harrison charged plaintiff with one count of disorderly conduct - engage in fight, pursuant to 18 Pa.C.S.A. §5503(a)(1).[2] Roche explained that even though the criminal complaint indicated that plaintiff was charged with two counts of disorderly conduct, plaintiff was actually only charged with one count but she was charged with violating two subsections

---

[2]Section 5503(a)(1) provides that a person is guilty of disorderly conduct if, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," he or she "engages in fighting or threatening, or in violent or tumultuous behavior." Section 5503(a)(3) authorizes the charging of a person with disorderly conduct if he or she "uses obscene language, or makes an obscene gesture."

of the offense. Roche stated that with the computer system they used, the charge had to be put in twice to reflect both subsections. Both subsections of the disorderly charge which Harrison filed against plaintiff were summary offenses. In particular, Harrison indicated in the criminal complaint that "Tara Banks did kick a parked vehicle and did use profane language toward this Officer and did resist arrest after yelling that this Officer was a Fucking Asshole in front of the public." (Doc. 33, Ex. 1). Harrison also charged the plaintiff with resisting arrest, pursuant to 18 Pa.C.S.A. §5104.[3] (Id.). In this charge, which was a second degree misdemeanor, Harrison stated that while he was effectuating a lawful arrest of the plaintiff, she created a substantial risk of bodily injury to him by "refusing to be handcuffed and pulling away from this Officer after being informed that she was under arrest for Disorderly Conduct and had to be dragged to an awaiting Patrol car." (Id.). *See also Commonwealth v. Banks*, Lackawanna County Court of Common Pleas, Docket No. CP-35-CR-0001427-2013.[4]

---

[3]Section 5104 provides that a person commits a misdemeanor of the second degree if, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance."

[4]The court reviewed plaintiff Bank's Lackawanna County Criminal Docket for case number CP-35-CR-0001427-2013 at http://ujsportal.pacourts.us. The court takes judicial notice of the plaintiff's Lackawanna County Criminal Docket as an official state court record. According to the Criminal Docket, two disorderly conduct charges were filed by Harrison against the plaintiff which were pursuant to 18 Pa.C.S.A. §5503(a)(1) for engaging in fighting.

In the affidavit of probable cause, which accompanied the criminal complaint, (Doc. 33, Ex. 1), Harrison averred under oath as follows:

> On arrival [at the Walmart] we were directed by a Female who stated that she was the one that had her car kicked toward the North end of the parking lot where she pointed out the Male that had kicked her car. We went to this area and spoke with the Male who was identified as [C.A.], a 16 year old juvenile who did admit to kicking the Female['s] car after she accused him of almost hitting her and she had at first kicked his car[.] We transported the Juvenile back to the Female['s] location where his Mother was present. All pertinent information was obtained and the Juvenile and his Mother were advised that he would be charged accordingly when an estimate for the damage was provided. Both the Juvenile and his Mother were released at this time. We then went to the Female who had her car kicked and she was identified as Tara Banks and provided a Pa. Identification card. We informed Banks that she must obtain an estimate for the damage. She immediately stated that this was total "Bullshit" that the person was being released. Banks continued to use slurr (sic) language such as "Spic["] toward said Juvenile. I explained that he was a Juvenile and when the estimate was received he would be charged. I also informed Banks that there was no damage to the Juvenile['s] car however she had kicked his vehicle first and would be cited for Disorderly Conduct. She then turned and said that if she were from this Country or knew someone she [would] be let go. Banks then yelled to this Officer in front of [] everyone in the parking lot as well as at least two Walmart Employees that this Officer was a "fucking ass hole" and began to walk away. I,Harrison walked over to her and advised her that she was now under arrest for Disorderly Conduct and when I attempted to place her in handcuffs she resisted and banged herself against her car and had to be dragged in handcuffs to a Patrol car. Banks was then transported to Police H.Q. and charges were completed. Banks was then transported to the Lacka[wanna] C[ounty], Processing Center and turned over to intake Deput[ies].

When C.A. kicked the plaintiff's car, the front passenger's side fender was dented above the wheel. Harrison received an estimate from the plaintiff of approximately $1200 for repairs to her car at the police station shortly

before the plaintiff's June 25, 2013 preliminary hearing on the charges he filed against her. The plaintiff did not ever receive any money from C.A. or Jorge for the damage to her car since no police report was issued regarding the incident. Roche had previously told the plaintiff that if she obtained an estimate for the damage to her car, a police report of the incident would be issued and C.A. would be criminally charged according to the amount of the damages. However, C.A. was never charged since Harrison was ordered not to by the Assistant District Attorney ("ADA") handling the criminal case against the plaintiff. The ADA believed that during C.A.'s testimony at the plaintiff's preliminary hearing on behalf of the Commonwealth, he may have incriminated himself of criminal offenses.

The disorderly conduct charge that Harrison filed against the plaintiff for using profane language was subsequently withdrawn at her preliminary hearing. The other disorderly conduct charge and resisting arrest charge were bound over for Lackawanna County Court of Common Pleas. On December 9, 2013, the plaintiff pled guilty to the §5503(a)(1) disorderly conduct summary charge pertaining to kicking Jorge's car. The resisting arrest charge was *nolle prossed* seemingly as part of a plea agreement. The plaintiff was sentenced the same day to pay a fine and costs.

## II.   PROCEDURAL HISTORY

The plaintiff filed her complaint on April 8, 2015, (Doc. 1), claiming damages from the defendant's "use of excessive and unreasonable force" during her arrest. The plaintiff's complaint contained three counts,  including

claims under §1983 for violations of her First, Fourth, and Fourteenth Amendment rights, as well as state law claims of assault and battery.

On June 8, 2015, Harrison filed a motion to dismiss plaintiff's original complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), (Doc. 11), followed by a brief in support on June 22, 2015. (Doc. 15). The plaintiff filed her brief in opposition on July 22, 2015. (Doc. 19). On August 24, 2015, the court found that plaintiff stated cognizable claims regarding First Amendment retaliation as well as unreasonable seizure and force under the Fourth Amendment. Further, the court allowed plaintiff's state law claims for assault and battery to proceed. The court also allowed plaintiff's claim for punitive damages against Harrison in his individual capacity with respect to her §1983 claims and state law claims to proceed. *See* Banks v. Harrison, 2015 WL 5023747 (M.D.Pa. Aug. 24, 2015).

Harrison filed his answer to plaintiff's complaint on September 8, 2015. (Doc. 23). Plaintiff was then permitted to file an amended complaint which she filed on October 2, 2015. (Doc. 26).

The first count of the amended complaint alleges that Harrison violated the Fourth Amendment by unreasonably seizing the plaintiff through his use of force. It further alleges that Harrison's conduct deprived plaintiff of due process rights under the Fourteenth Amendment. Finally, it alleges that Harrison retaliated against plaintiff by using excessive force to arrest her after she exercised her free speech right pursuant to the First Amendment.

The second count alleges that Harrison committed an assault by "intend[ing] to put [the plaintiff] in reasonable and immediate apprehension of

a harmful or offensive contact with her body." The third count alleges that Harrison's conduct constituted a battery and he acted "with the intent to cause a harmful or offensive contact with [the plaintiff's] body."

In the fourth and fifth counts, plaintiff asserts a Fourth Amendment malicious prosecution claim against Harrison under §1983 as well as a state law malicious prosecution claim, respectively.

As relief, the plaintiff requests monetary damages, including punitive damages, with respect to all of her claims. The plaintiff also seeks attorneys' fees and costs under 42 U.S.C. §1988. Once again, the plaintiff did not indicate if she sues Harrison in his individual and/or official capacity.

Harrison filed his answer to the amended complaint with affirmative defenses on October 16, 2016. (Doc. 27).

After discovery was completed, the plaintiff filed a motion for partial summary judgment on April 25, 2016. (Doc. 30). The plaintiff simultaneously filed her brief in support, (Doc. 31), her statement of material facts, (Doc. 32), and her appendix of exhibits, (Doc. 33). On May 16, 2016, Harrison filed his response to plaintiff's statement of material facts, counter statement of material facts, and his brief in opposition to her motion. The plaintiff filed a reply brief on June 1, 2016. (Doc. 36).

This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343, and it can exercise pendent jurisdiction over the state law claims under §1367. Venue is proper in this district.

## III.   STANDARDS OF REVIEW

### A. Summary Judgment

The plaintiff's motion for summary judgment is brought pursuant to the provisions of Fed.R.Civ.P. 56. Plaintiff argues that under Rule 56, the undisputed material facts demonstrate that she is entitled to summary judgment with respect to all of the counts of plaintiff's complaint.

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D.Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The nonmoving party "may not rest on the allegations set forth in its pleadings but must counter with evidence that demonstrates a genuine issue of fact." Big Apple BMW, 974 F.2d at 1363. However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

### B. Section 1983

To state a claim under section 1983, a plaintiff must meet two threshold requirements. She must allege: 1) that the alleged misconduct was committed

by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, Polk Cnty. v. Dodson, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing Rode). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

With respect to punitive damages for a §1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing

Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

## IV.   DISCUSSION

The plaintiff moves for partial summary judgment with respect to liability on Counts One, Four and Five of her amended complaint, (Doc. 26). In Count One, plaintiff claims Harrison violated her Fourth Amendment rights by using unreasonable force on her by allegedly banging her head off her car and dragging her to his patrol car and, violated her First Amendment rights by retaliating against her for exercising free speech when he arrested her after she cursed at him. In Counts Four and Five, plaintiff claims that Harrison maliciously prosecuted her with respect to the disorderly conduct charge for cursing and the resisting arrest charge.

### A. Malicious Prosecution Claims, Counts Four and Five

Plaintiff seeks judgment as a matter of law regarding her Fourth Amendment and state law claims that Harrison maliciously prosecuted her when he charged her with disorderly conduct for cursing at him and when he charged her with resisting arrest after he seized and arrested her.

It is well-settled that "[t]o prove malicious prosecution [under §1983]... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor*;* (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d

497, 521 (3d Cir. 2003); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009); Piazza v. Lakkis, 2012 WL 2007112, *7 (M.D.Pa. June 5, 2012) (citation omitted). "[A] claim for malicious prosecution 'permits damages for confinement imposed pursuant to legal process.'" Piazza v. Lakkis, 2012 WL 2007112, *8 (citations omitted).  Further, "a claim for malicious prosecution seeks to remedy 'the deprivation of liberty accompanying prosecution, not prosecution itself.'" Id. (citations omitted). In order for plaintiff to prevail on her malicious prosecution claim under §1983, she must satisfy each of the above stated elements. Kossler v. Crisanti, 564 F.3d at 186. A state law claim of malicious prosecution has the stated elements one to four but not five. *See* Collins v. Christie, 337 Fed.Appx. 188, 194 (3d Cir. 2009).

No doubt that Harrison initiated a criminal proceeding against plaintiff regarding the disorderly conduct charge for cursing at him and the resisting arrest charge and that the criminal proceeding ended in plaintiff's favor on these charges. While Harrison challenges whether these two charges terminated in plaintiff's favor, the court finds that plaintiff has shown that they did. Since "the circumstances-both the offenses as stated in the statute and the underlying facts of the case-indicate that the judgment as a whole" reflects the plaintiff's innocence of the stated two charges, then the plaintiff has established the favorable termination element. *See* Kossler v. Crisanti, 564 F.3d at 188. There is also no dispute that plaintiff was seized by Harrison and taken into custody. However, the court finds that disputed material facts exist with respect to whether Harrison had probable cause to charge plaintiff with disorderly conduct after she cursed at him and to charge her with resisting

arrest after he took her into custody on the disorderly charge. Disputed facts also exists as to whether Harrison acted maliciously or for a purpose other than bringing the plaintiff to justice.

The Third Circuit in Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010), discussed the probable cause which a police officer needs to arrest a person and stated:

> Probable cause "requires more than mere suspicion [.]" Orsatti [v. N.J. State Police], 71 F.3d [480] at 482 [(3d Cir. 1995)]. However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Rather, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483; *see also* Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." (citation omitted).). "Probable cause need only exist as to [one of the] offense[s] that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). In analyzing whether probable cause existed for an arrest, we must take a "totality-of-the-circumstances approach." Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Based on the scene at the time of the incident, as described by Harrison and Roche, plaintiff's conduct could be construed as threatening or tumultuous when she was very irate and very excited and continually questioned Harrison in front of Walmart patrons in the parking lot why he let C.A. and Jorge leave the scene and why he did not arrest or charge either one of them. The officers also stated that plaintiff was using derogatory language as to C.A.'s nationality. Harrison testified at the plaintiff's preliminary

hearing that it was both the crude language plaintiff used in public and his knowledge that plaintiff had kicked C.A.'s car which led him to charge plaintiff with disorderly conduct. Specifically, Harrison testified that the disorderly conduct charge was based on plaintiff "yelling in public view" and the "derogatory remarks made" by plaintiff toward C.A. and his mother. (Doc. 33, Ex. B, at 87-88). Plaintiff points out that Harrison's testimony at her preliminary hearing was different than his deposition testimony. Such an issue is a credibility determination for the jury to make.

Additionally, Roche testified that he did not believe that Harrison merely arrested plaintiff for cursing. He believed that the arrest was based on the totality of the circumstances considering the fact that there were people all over the area in the Walmart parking lot that could hear the exchange between plaintiff and Harrison and, plaintiff's "general attitude" at the time in which she was "amped-up" and very irate and verbal. Plaintiff views the facts in a vacuum and argues that Harrison arrested her based only the fact that "she called him a curse word and nothing more." It is for the jury to determine if Harrison simply arrested plaintiff based on the fact that she cursed at him or if Harrison had probable cause in light of all of the surrounding facts to believe plaintiff was causing a public disturbance and that the curse was the tipping point. *See* Carney v. Pennsauken Twp. Police Dept., 598 Fed.Appx. 80, 82 (3d Cir. 2015) ("To determine whether [the police officers] had probable cause to arrest and initiate a prosecution against [plaintiff], we look to the totality of the circumstances and rely on 'the factual and practical considerations of everyday life on which reasonable and prudent men ...

act.'") (citation omitted). Moreover, "[t]he existence or absence of probable cause generally presents a question of fact for the jury." Adams v. Springmeyer, 17 F.Supp.3d 478, 498 (W.D.Pa. 2014) (citing Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)). "A court can conclude that probable cause existed as a matter of law only if the evidence, when viewed in the light most favorable to the nonmoving party, would not support a finding to the contrary." Id. (citing Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003)).

The facts are also disputed whether Harrison had probable cause to charge plaintiff with resisting arrest since there is a factual dispute whether Harrison's arrest for the stated disorderly conduct charge was lawful. With respect to the resisting arrest charge, there was an independent determination of probable cause by the Magisterial District Judge in binding this charge over to Lackawanna County Court. *See* Fisher v. Matthews, 792 F.Supp.2d 745, 778 (M.D.Pa. 2011). Additionally, both Harrison and Roche testified that plaintiff was uncooperative, pulling, twisting and bending over the entire time as Harrison tried to take her to his patrol car. Therefore, there is a factual question as to whether plaintiff's alleged conduct created a substantial risk of bodily injury to Harrison and Roche.

Thus, plaintiff's motion for summary judgment with respect to Counts Four and Five of the Amended Complaint raising malicious prosecution claims is **DENIED**.

### B. First Amendment Retaliation Claim, Count One

The plaintiff alleges that Harrison retaliated against her by arresting her

and using excessive force after she cursed at him for not arresting C.A. or his mother. To establish a claim for First Amendment retaliation, a plaintiff must allege: "(1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Clifton v. Borough of Eddystone, 824 F.Supp.2d 617, 627 (E.D.Pa. 2011) (citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)).

The First Amendment protects all speech "except for certain narrow categories deemed unworthy of full First Amendment protection–such as obscenity, 'fighting words,' and libel ... ." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282-83 (3d Cir. 2004). In Miller v. California, 413 U.S. 15, 24 (1973), the U.S. Supreme Court stated that speech qualifies as obscene when an ordinary person would find that the speech "appeals to the prurient interest" and "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Fighting words are defined as "those which by their very utterance inflict or tend to incite an immediate breach of the peace." Rosenfeld v. New Jersey, 408 U.S. 901, 912 (1972). The Third Circuit in Johnson v. Campbell, 332 F.3d 199, 213 (3d Cir. 2003), however, held that curse words spoken to a police officer typically do not qualify as fighting words. *See also* City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502 (1987) ("...the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

As this court previously held, the plaintiff's remark to Harrison

constituted speech protected by the First Amendment for present purposes. *Clifton v. Borough of Eddystone, 824 F.Supp.2d at 627-28* (court held that cursing at police officer was speech protected by the First Amendment) (citing *City of Houston v. Hill, 482 U.S. at 461*). Thus, the court finds that the plaintiff has satisfied the first prong of a First Amendment retaliation claim.

In the second prong, the plaintiff must allege that Harrison responded to her remark with retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights. *Clifton v. Borough of Eddystone, 824 F.Supp.2d at 628*. The plaintiff must also show that Harrison's conduct was more than *de minimus*, but not substantial. *Id.* (citing *McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)*).

The plaintiff alleges that she experienced adverse action because she was arrested after cursing at Harrison and that he banged her head off of her car, he handcuffed her behind her back, he dragged to his patrol car and detained her. He then charged her with disorderly conduct and resisting arrest. The plaintiff subsequently had a preliminary hearing and later appeared in court where she pled guilty to summary disorderly conduct charge for kicking C.A.'s car. *See Commonwealth v. Banks*. Thus, the plaintiff has presented enough evidence to satisfy the second prong of her retaliation claim. *Clifton v. Borough of Eddystone, 824 F.Supp.2d at 628* (plaintiff's arrest, detention and prosecution for cursing at police officer met the low threshold regarding the effect of the retaliatory conduct).

To establish the third prong of her retaliation claim, the plaintiff must demonstrate a causal connection between her speech and the conduct of

Harrison, including her arrest and the alleged use of excessive force. Ambrose v. Twp. of Robinson, 303 F.3d 488, 494 (3d Cir. 2002). The person accused of taking retaliatory action must be aware of the speech. Id. at 493. The Third Circuit in Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir. 1997), stated that while temporal proximity between the speech and the alleged retaliatory action "provides an evidentiary basis from which an inference can be drawn," the plaintiff must prove causation in a prima facie case for First Amendment retaliation.

Even though the plaintiff has presented sufficient evidence to establish a causal link to maintain her retaliation claim, *see* Clifton v. Borough of Eddystone, 824 F.Supp.2d at 628 (court found causal link since plaintiff was arrested only moments after she cursed at officer), disputed facts exist as to whether Harrison arrested her merely because she called him a curse word and whether he used excessive force. There is no dispute the plaintiff's arrest, accompanied by the use of force, occurred immediately after she cursed at Harrison. However, the facts are disputed as to whether her arrest and the force used thereafter were caused only by her remark or whether her arrest was based on the totality of the circumstances. Therefore, the plaintiff's motion for summary judgment as to her retaliation claim is **DENIED**.[5]

---

[5]As previously noted, because the plaintiff's retaliation claim is based, in part, on her arrest and prosecution, the plaintiff must "plead and prove an absence of probable cause." Clifton v. Borough of Eddystone, 824 F.Supp.2d at 628 n. 6 (citing Hartman v. Moore, 547 U.S. 250, 265–66, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)). As discussed above, the jury must decide whether Harrison had probable cause to arrest the plaintiff based on the disputed facts in this case.

### *C. Fourth Amendment Excessive Force Claim*

The plaintiff has presented evidence that Harrison's use of force during her arrest constituted an unreasonable seizure under the Fourth Amendment. She also testified that Harrison used unreasonable force because she cursed at him. "An arrest is lawful under the Fourth Amendment only if it is supported by probable cause." Clifton v. Borough of Eddystone, 824 F.Supp.2d at 623 (citing Johnson v. Campbell, 332 F.3d at 211). "The dispositive issue is not whether Plaintiff actually committed the offense but whether Officer [Harrison] had probable cause to believe Plaintiff committed the offense at the time he arrested her." Id. (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)). Moreover, a "claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable." Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002).

As discussed, the court finds disputed material facts as to whether Harrison had probable cause to arrest plaintiff and whether her seizure was reasonable. The evidence is disputed as to "whether under the totality of the circumstances, [Harrison's] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). In *Graham*, the U.S. Supreme Court held that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. Some of the factors that help determine the reasonableness of force used during the arrest are: "the severity of the crime at issue, whether the suspect

24

poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Plaintiff maintains that Harrison decided not to charge anyone in the incident and that he was leaving the scene and only arrested her because she cursed at him. Plaintiff testified that Harrison grabbed her by the back of her neck and slammed her forehead off the roof of her car. Plaintiff also stated that Harrison handcuffed her behind her back and then dragged her to his patrol car. Harrison denies these contentions and stated that plaintiff herself banged her head off the roof of her car and yelled "you're hurting me." (Doc. 33, at 87). He argues that his actions were reasonable under all of the circumstances due to plaintiff's unruly behavior, the kicking of C.A.'s car, and the disturbance she created in the Walmart parking lot in front of many people. The court finds disputed facts exist regarding plaintiff's Fourth Amendment claim. Therefore, the plaintiff's motion for summary judgment with respect to her Fourth Amendment claim is **DENIED**.

## V.    CONCLUSION

The plaintiff's motion for partial summary judgment, (Doc.30), with respect to liability on Counts One, Four and Five of her amended complaint, (Doc. 26), is **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 29, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0693-02-wpd